1
2
3
4

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

5
6
7

| | |
|---|---|
| LN MANAGEMENT LLC SERIES 2543 CITRUS GARDEN, | Case No. 2:15-cv-00112-MMD-CWH |
| Plaintiff, | ORDER |
| v. | (Joint Motion for Summary Judgment – dkt. no. 32) |
| MARCELLE GELGOTAS, et al., | |
| Defendants, | |
| FEDERAL HOUSING FINANCE AGENCY, as Conservator for the Federal National Mortgage Association, | |
| Intervenor. | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | |
| Counterclaimant, | |
| FEDERAL HOUSING FINANCE AGENCY, as Conservator for the Federal National Mortgage Association, | |
| Intervenor, | |
| v. | |
| LN MANAGEMENT LLC SERIES 2543 CITRUS GARDEN, et al. | |
| Counter-Defendants. | |

## I. SUMMARY

After purchasing property through a foreclosure sale, Plaintiff initiated this action for quiet title in Nevada state court. (Dkt. no. 6-2.) Plaintiff contends that it owns property located at 2543 Citrus Garden Circle, Henderson, Nevada ("the Property") absent any

other right, title, or interest in the Property. (*Id.* at 4-5.) After removing the lawsuit, Defendant Federal National Mortgage Association ("Fannie Mae") and Intervenor Federal Housing Finance Agency ("FHFA") filed a Joint Motion for Summary Judgment ("Motion") (dkt. no. 32), arguing that Plaintiff cannot demonstrate, as a matter of law, that it owns the Property free and clear of any other right, title, or interest. The Court has reviewed response briefs filed by Plaintiff (dkt. no. 46) and former[1] Counter-Defendant Green Valley Ranch Community Association, Inc. ("Green Valley") (dkt. no. 47). The Court has also reviewed Fannie Mae and FHFA's reply brief (dkt. no. 52). For the reasons discussed below, the Court will deny the Motion.

## II.    BACKGROUND

On March 26, 2003, a Deed of Trust ("DOT") securing a $152,000 loan for the Property ("the Loan") was recorded. (Dkt. no. 33-1 at 2-3.)[2] The DOT lists Mercury Mortgage as the lender and Marcelle Gelgotas as the borrower. (*Id.* at 2.) The DOT also includes a Planned Unit Development Rider that identifies the Property as part of the Green Valley Ranch planned unit development. (*Id.* at 13.) Fannie Mae alleges that it subsequently purchased the Loan from Principal Residential Mortgage Capital Resources, LLC on or about April 1, 2003. (Dkt. no. 32-2 at 4, 7.) Five years later, in September 2008, Fannie Mae was placed into conservatorship, and FHFA was appointed as its conservator. (Dkt. no. 32-1 at 3.)

///

---

[1]On March 2, 2016, Fannie Mae and FHFA filed a stipulation to voluntarily dismiss their counter-claims against Green Valley without prejudice. (Dkt. no. 63.) The Court granted the stipulation on March 9, 2016. (Dkt. no. 64.) The Court will nevertheless address the arguments raised in Green Valley's response brief because they go to the merits of Fannie Mae and FHFA's Motion.

[2]Fannie Mae and FHFA request judicial notice of certain public records to support their Motion. (Dkt. no. 33.) Under Rule 201 of the Federal Rules of Evidence, courts may take judicial notice of "undisputed matters of public record." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004). Fannie Mae and FHFA's request includes matters of public record like the DOT, a Corporate Assignment Deed of Trust, several recorded documents regarding the borrower's default and Green Valley's election to sell, and the Trustee's Deed Upon Sale. (*See* dkt. no. 33-1.) The Court will take judicial notice of these undisputed public records.

In April 2010, Green Valley recorded a Notice of Claim of Delinquent Assessment Lien on the Property, indicating that owners Mark and Michelle Rock owed $913.96 in unpaid assessments, fees, fines, and interest to Green Valley. (Dkt. no. 33-1 at 21.) Green Valley subsequently recorded a Notice of Default and Election to Sell on July 12, 2011. (*Id.* at 24-25.) Two years later, on July 11, 2013, Green Valley recorded a Notice of Foreclosure Sale; a Trustee's Deed Upon Sale was recorded on August 21, 2013, indicating that the Property was sold to Plaintiff at a public auction on August 6, 2013 ("the Foreclosure Sale"). (*Id.* at 28-29, 32-33.)

Almost a year later, on June 27, 2014, CitiMortgage, Inc., the successor in interest to Principal Residential Mortgage, Inc., conveyed the Property's DOT to Fannie Mae. (*Id.* at 17.) The conveyance was recorded through a Corporate Assignment Deed of Trust on June 30, 2014. (*Id.*)

Plaintiff filed this lawsuit in Nevada state court on January 20, 2014, seeking quiet title and a declaratory judgment that Plaintiff rightfully owned the Property without any encumbrances.[3] (Dkt. no. 6-2 at 3-5.) Plaintiff initially sued Principal Residential Mortgage, Inc. as the successor in interest to Mercury Mortgage, but on December 29, 2014, the state court granted the parties' stipulation to substitute Fannie Mae for Principal Residential Mortgage. (Dkt. no. 6-10.) The parties had stipulated that Fannie Mae purchased the Loan on or about April 1, 2003; that after the DOT was created, Principal Residential Mortgage merged with CitiMortgage, Inc.; and that CitiMortgage assigned its interest in the DOT to Fannie Mae in June 2014. (*Id.* at 5-8.) Fannie Mae removed the lawsuit to this Court on January 20, 2015. (Dkt. no. 6.)[4]

///

_____

[3]Plaintiff alternatively sought a determination of any unextinguished interests in the Property, and an order compelling the parties holding those interests to "accept payments under the terms of any surviving lien." (Dkt. no. 6-2 at 4-5.)

[4]Fannie Mae filed a corrected version of its Petition for Removal (dkt. no. 6) on January 21, 2015. The corrected version appears to include additional exhibits demonstrating that all properly served Defendants consented to removal. (Dkt. no. 6-12.) The Court will refer to the corrected Petition for Removal in this Order.

1    FHFA intervened as Fannie Mae's conservator in February 2015. (Dkt. nos. 15,

2    19.) Several days later, Plaintiff and Green Valley stipulated to dismiss Green Valley

3    without prejudice. (Dkt. nos. 20, 23.) FHFA and Fannie Mae filed the Motion on March

4    20, 2015, and the parties agreed to stay discovery pending its resolution. (Dkt. nos. 32,

5    35, 38.) The Court held a hearing on the Motion (along with several similar motions in

6    related cases) on February 10, 2016. (Dkt. no. 61.)

7    III.    **LEGAL STANDARD**

8    "The purpose of summary judgment is to avoid unnecessary trials when there is

9    no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,

10   18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the movant

11   shows that there is no genuine dispute as to any material fact and the movant is entitled

12   to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*,

13   477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis

14   on which a reasonable fact-finder could find for the nonmoving party and a dispute is

15   "material" if it could affect the outcome of the suit under the governing law. *Anderson v.*

16   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on

17   the material facts at issue, however, summary judgment is not appropriate. *See id.* at

18   250-51. "The amount of evidence necessary to raise a genuine issue of material fact is

19   enough 'to require a jury or judge to resolve the parties' differing versions of the truth at

20   trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l*

21   *Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary

22   judgment motion, a court views all facts and draws all inferences in the light most

23   favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793

24   F.2d 1100, 1103 (9th Cir. 1986).

25   The moving party bears the burden of showing that there are no genuine issues

26   of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In

27   order to carry its burden of production, the moving party must either produce evidence

28   negating an essential element of the nonmoving party's claim or defense or show that

4

1  the nonmoving party does not have enough evidence of an essential element to carry its

2  ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210

3  F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements,

4  the burden shifts to the party resisting the motion to "set forth specific facts showing that

5  there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may

6  not rely on denials in the pleadings but must produce specific evidence, through

7  affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME*

8  *Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show

9  that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am. NT &*

10  *SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith*

11  *Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in

12  support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

13  **IV.   ANALYSIS**

14      Fannie Mae and FHFA argue that Plaintiff cannot, as a matter of law, establish

15  that it owns the Property free and clear of any other interests because federal law

16  protects Fannie Mae's property interest from foreclosures to which FHFA — as Fannie

17  Mae's conservator — has not consented. (*See* dkt. no. 32 at 8-12.) They further contend

18  that federal law preempts the Nevada law on which Plaintiff relies in asserting that the

19  Foreclosure Sale extinguished Fannie Mae's interest in the Property. (*Id.* at 6-8.) In

20  response, Plaintiff and Green Valley argue that Fannie Mae lacked — or failed to offer

21  evidence of — a recorded interest in the Property at the time of the Foreclosure Sale,

22  such that the federal law protections cannot apply to this case. (*See* dkt. no. 46 at 3-7;

23  dkt. no. 47 at 7-11.) Green Valley further contests whether Fannie Mae and FHFA have

24  submitted evidence that, when read in the light most favorable to the non-moving

25  parties, demonstrates that Fannie Mae had an interest in the Property before the

26  Foreclosure Sale. (*Id.* at 7-9.) Green Valley requests additional discovery on that issue.

27  (*Id.*) The Court will address these arguments in turn.

28  ///

5

### A.    Background on Relevant State and Federal Law

Under NRS § 116.3116, a homeowners' association ("HOA") can establish a "lien on a unit for . . . any assessment levied against that unit or any fines imposed against the unit's owner from the time . . . the assessment or fine becomes due." NRS § 116.3116(1). Section 116.3116 further provides that such a lien "is prior to all other liens and encumbrances on a unit except," among other categories of liens, "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." NRS § 116.3116(2)(b). The statute, however, contains an exception to this exception, allowing an HOA to establish a lien that takes priority over a first security interest for unpaid assessments over a nine-month period preceding the enforcement of the lien. NRS § 116.3116.[5]

In 2014, the Nevada Supreme Court ruled that NRS § 116.3116 creates a "true superpriority lien" for 9 months of unpaid HOA assessments and certain charges. *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 419 (Nev. 2014) (en banc). Accordingly, the court further held, a nonjudicial foreclosure of an HOA lien under NRS § 116.3116 would extinguish any first deed of trust, so long as certain statutory notice requirements are followed. *See id.* at 411-17. Here, Plaintiff relies on this framework to argue that the 2013 Foreclosure Sale extinguished the first DOT that Fannie Mae claims to have held on the Property.

Fannie Mae and FHFA, however, point out that the Housing and Economic Recovery Act of 2008 ("HERA"), 122 Stat. 2654 (2008), both created FHFA and established certain protections for property under FHFA's control as conservator of

---

[5]Section 116.3116 was amended and reorganized in 2015. *See* 2015 Nev. Stat. 1331, 1334. The statute retains the exceptions described above, but creates a separate subsection (NRS § 116.3116(3)), which states that an HOA lien may take priority over a first deed of trust for "[t]he unpaid amount of assessments . . . which would have become due in the absence of acceleration during the 9 months immediately preceding the date on which the notice of default and election to sell is recorded," in addition to certain charges and costs. NRS § 116.3116(3). To avoid confusion over the recently reorganized subsections, the Court will cite to NRS § 116.3116 generally in discussing the provisions that give an HOA a first priority lien.

1   Fannie Mae.[6] *See* 12 U.S.C. § 4617(j) (listing protections). FHFA became Fannie Mae's

2   conservator in 2008. (Dkt. no. 32-1 at 3.) HERA provides that when FHFA acts as a

3   conservator, "[n]o property of [FHFA] shall be subject to . . . foreclosure[] or sale without

4   the consent of [FHFA]." 12 U.S.C. § 4617(j)(3). The effects of this provision ("the

5   Consent Provision") are at the heart of the parties' dispute.

6       **B.**    **Whether 12 U.S.C. § 4617(j)(3) Preempts NRS § 116.3116**

7         Fannie Mae and FHFA contend that, pursuant to the Consent Provision, the

8   Foreclosure Sale could not have extinguished Fannie Mae's interest in the Property

9   without FHFA's consent. (*See* dkt. no. 32 at 6-8.) They are careful to clarify that they do

10   not contest whether, in general, an HOA foreclosure sale can extinguish a first deed of

11   trust under Nevada law. (*See* dkt. no. 52 at 8.) Instead, Fannie Mae and FHFA argue

12   that the Consent Provision conflicts with NRS § 116.3116 because Nevada's laws would

13   allow Fannie Mae's interest in the Property to be extinguished without FHFA's consent.

14   *See SFR Invs. Pool 1*, 334 P.3d at 419. In short, the Consent Provision requires consent

15   before Fannie Mae's property interest could be foreclosed while Nevada law does not.

16   Fannie Mae and FHFA thus assert that the Consent Provision preempts NRS

17   § 116.3116. (Dkt. no. 32 at 6-8.) The Court agrees.

18         Federal preemption emanates from the Supremacy Clause, which provides that

19   the "Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const.

20   art. VI, cl. 2. "There are 'three classes of preemption': express preemption, field

21   preemption and conflict preemption." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1022

22   (9th Cir. 2013) (quoting *United States v. Alabama*, 691 F.3d 1269, 1281 (11th Cir.

23   2012)). Relevant here, conflict preemption occurs where state law conflicts with a federal

24   statute. *Id.* at 1023. Conflict preemption "has two forms: impossibility and obstacle

25   preemption." *Id.* Impossibility preemption arises "where it is impossible for a private party

---

27         [6]FHFA may serve as the conservator or receiver to a "regulated entity." 12 U.S.C. § 4617(a)(1). A regulated entity includes Fannie Mae, the Federal Home Loan Mortgage

28   Corporation ("Freddie Mac"), or any Federal Home Loan Bank. 12 U.S.C. § 4502(20).

1   to comply with both state and federal law." *Id.* (quoting *Crosby v. Nat'l Foreign Trade*
2   *Council*, 530 U.S. 363, 372 (2000)). Obstacle preemption occurs where a state law is "an
3   obstacle to the accomplishment and execution of the full purposes and objectives of
4   Congress." *Id.* (quoting *Arizona v. United States*, 132 S. Ct. 2492, 2501 (2012)).

5   Two pillars of the Supreme Court's preemption jurisprudence must guide the
6   Court's analysis in this case. *Id.* First, "the purpose of Congress is the ultimate
7   touchstone in every pre-emption case." *Id.* (quoting *Wyeth v. Levine*, 555 U.S. 555, 565
8   (2009)). Second, "courts should assume that the 'historic police powers of the States' are
9   not superseded 'unless that was the clear and manifest purpose of Congress.'" *Arizona*,
10  132 S. Ct. at 2501 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).
11  Applying these guidelines here, the Court finds that § 4617(j)(3) conflicts with NRS
12  § 116.3116 to the extent that the Nevada statute created a superpriority HOA lien
13  capable of extinguishing Fannie Mae's interest in the Property without FHFA's consent.

14                  1.      **NRS § 116.3116 Conflicts with the Consent Provision**

15  Through HERA, Congress gave FHFA broad powers to act as Fannie Mae's
16  conservator. FHFA assumed that role in 2008 as a "result of the economic downturn and
17  housing market collapse, which eroded the value of [Fannie Mae's] assets." *Cty. of*
18  *Sonoma v. Fed. Hous. Fin. Agency*, 710 F.3d 987, 989 (9th Cir. 2013). When FHFA
19  became Fannie Mae's conservator, FHFA succeeded to "all rights, titles, powers, and
20  privileges" of Fannie Mae, including, Fannie Mae and FHFA argue, Fannie Mae's
21  interest in the Property. 12 U.S.C. § 4617(b)(2)(A)(i). Under HERA, FHFA may "take
22  actions 'necessary to put the regulated entity in a sound and solvent condition' and
23  actions as may be appropriate to 'preserve and conserve the assets and property of the
24  regulated entity.'" *Id.* at 990 (quoting 12 U.S.C. § 4617(b)(2)(D)). To facilitate the
25  protection of assets under FHFA's control as Fannie Mae's conservator, HERA further
26  provides in the Consent Provision that "[n]o property of [FHFA] shall be subject to levy,
27  attachment, garnishment, foreclosure, or sale without the consent of [FHFA]." 12 U.S.C.
28  § 4617(j)(3). The Nevada Supreme Court, by contrast, has interpreted NRS § 116.3116

                                                    8

as creating a "true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *SFR Invs. Pool 1*, 334 P.3d at 419. Thus, under Nevada law, an HOA foreclosure could extinguish Fannie Mae's property interest without FHFA's consent.

Rather than protecting properties under FHFA's control as conservator, NRS § 116.3116 acts as an obstacle to FHFA's ability to "preserve and conserve the assets and property of [Fannie Mae]." 12 U.S.C. § 4617(b)(2)(B)(iv). If, as Fannie Mae and FHFA allege here, NRS § 116.3116 allowed the Foreclosure Sale to terminate Fannie Mae's interest in the Property without FHFA's consent, then the Nevada law effectively impedes FHFA from taking actions "necessary to put [Fannie Mae] in a sound and solvent condition." 12 U.S.C. § 4617(b)(2)(D)(i). Thus, as interpreted by the Nevada Supreme Court in *SFR Investments Pool 1*, 334 P.3d at 419, NRS § 116.3116 directly conflicts with the plain language of the Consent Provision. The Court therefore finds that NRS § 116.3116 is preempted to the extent that it allows an HOA foreclosure sale to extinguish a first deed of trust held by FHFA as Fannie Mae's conservator without FHFA's consent. This conclusion aligns with the persuasive reasoning of other courts in this District, which have found that the Consent Provision displaces NRS § 116.3116 to the extent that the statutes conflict. *See, e.g., Skylights LLC v. Byron*, 112 F. Supp. 3d 1145, 1159 (D. Nev. 2015) ("The Court finds that 12 U.S.C. § 4617(j)(3) preempts [NRS] § 116.3116 to the extent that a homeowner association's foreclosure of its super-priority lien cannot extinguish a property interest of Fannie Mae or Freddie Mac while those entities are under FHFA's conservatorship.")

**2. Green Valley's Arguments Regarding 12 U.S.C. § 1825 Are Unpersuasive**

Neither Plaintiff nor Green Valley explicitly argue that NRS § 116.3116 is not preempted by the Consent Provision. (*See* dkt. nos. 46, 47.) Green Valley does argue, however, that the Consent Provision "is not as expansive as the moving parties suggest" (dkt. no. 47 at 14), insisting that 12 U.S.C. § 1825(b)(2) — an analogous provision that ///

applies to the Federal Deposit Insurance Corporation ("FDIC")[7] — does not cover liens attached by private entities. (Dkt. no. 47 at 14-15.) Green Valley relies on *FDIC v. McFarland*, 243 F.3d 876, 886 (5th Cir. 2001), where the Fifth Circuit held that § 1825(b)(2) extends only to liens created by state and local taxing authorities. Fannie Mae and FHFA suggest that *McFarland* appears to be anomalous in holding that § 1825(b)(2) is so limited. (Dkt. no. 52 at 21-23.) But even assuming, without deciding, that § 1825(b)(2) applies only to tax liens, such a reading would run counter to the plain language and structure of the Consent Provision.

In limiting § 1825(b)(2) to tax liens, the *McFarland* court relied on the historical structure and title of 12 U.S.C. § 1825, which formerly dealt only with taxation. *McFarland*, 243 F.3d at 886. The court also looked to the statute's legislative history, finding no evidence that Congress added § 1825(b)(2) to extend the reach of § 1825 beyond the taxation context. *See id.* Here, however, Green Valley has not offered any legislative history to suggest that a similarly narrow reading could be applied to the Consent Provision. (*See* dkt. no. 47 at 14-15.) More important, Green Valley ignores the structure and titles of 12 U.S.C. § 4617(j) ("Subsection J"), where the Consent Provision appears. Subsection J applies "with respect to [FHFA] in any case in which [FHFA] is acting as a conservator or a receiver." 12 U.S.C. § 4617(j)(1). It includes separate provisions for "Taxation," "Property Protection" — the Consent Provision at issue here — and "Penalties and Fines." 12 U.S.C. § 4617(j)(2)-(4). Similar to the Consent Provision, which protects property under FHFA's control from unwanted foreclosures or sales, the "Taxation" and "Penalties and Fines" provisions limit the extent to which FHFA and property under its control can be taxed or made subject to penalties or fines. 12 U.S.C. § 4617(j)(3)-(4). Section 1825(b) similarly addresses taxation, property protection, and

///

_____

[7]Section 1825(b)(2) reads: "No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property or the Corporation." 12 U.S.C. § 1825(b)(2).

1   penalties and fines. 12 U.S.C. § 1825(b)(1)-(3). But those provisions are not separately

2   labeled like the provisions in Subsection J.

3          Considering the clear language, titles, and structure of Subsection J, and absent

4   persuasive argument to suggest that the *McFarland* court's reasoning should apply with

5   equal force to the Consent Provision, Green Valley has not demonstrated that the

6   Consent Provision should be limited to tax liens only. The Consent Provision plainly

7   applies to an HOA lien. Thus, Green Valley's arguments about *McFarland* do not affect

8   the Court's conclusion that the Consent Provision preempts NRS § 116.3116.

9          **C.     Fannie Mae's Interest in the Property**

10         Although the Court finds that the Consent Provision preempts NRS § 116.3116,

11   the Court cannot grant summary judgment unless Fannie Mae and FHFA show that the

12   Property constitutes "property of [FHFA]." 12 U.S.C. § 4617(j)(3). Fannie Mae and FHFA

13   assert that FHFA's property interests are broad, extending to mortgages and liens that it

14   controls as Fannie Mae's conservator. (Dkt. no. 32 at 8 (citing *Simon v. Cebrick*, 53 F.3d

15   17, 21 (3d Cir. 1995) (concluding that 12 U.S.C. § 1852(b)(2), with protects property

16   interests of the FDIC, extends to both fee and lien interests)).) Fannie Mae's 2003

17   purchase of the Loan, the moving parties argue, places the Property among the property

18   interests that would be protected by the Consent Provision. (*See id.* at 8-9.) Plaintiff and

19   Green Valley, however, suggest that there is a genuine dispute of material fact with

20   regard to Fannie Mae's interest in the Property. (Dkt. no. 46 at 5; dkt. no. 47 at 8-11.)

21   They argue that Fannie Mae and FHFA have failed to provide enough evidence — or

22   have provided contradictory evidence — to meet their initial burden of establishing that

23   Fannie Mae had an interest in the Property at the time of the Foreclosure Sale.[8]

24   _____

[8]Fannie Mae and FHFA argue that Plaintiff and Green Valley have repackaged a
25   legal dispute over the nature of Fannie Mae's interest in the Property (and whether that
     interest needed to be recorded under Nevada law) into a factual dispute. (Dkt. no. 52 at
26   4.) Fannie Mae and FHFA are correct that Plaintiff and Green Valley challenge the legal
     import of Fannie Mae's purchase of the Loan. (*See* dkt. no. 46 at 4; dkt. no. 47 at 9-11.)
27   But the disputes over when Fannie Mae acquired its interest in the Property, and
     whether Fannie Mae and FHFA have presented sufficient evidence to establish the date
28   of acquisition are both factual in nature and intertwined with this legal dispute. Because
     *(fn. cont..)*

1    Fannie Mae and FHFA assert that Fannie Mae purchased the Loan on or about

2    April 1, 2003. (Dkt. no. 32-2 at 4.) They offer the declaration of John Curcio (the "Curcio

3    Declaration"), Fannie Mae's Assistant Vice President, which includes printouts from

4    Fannie Mae's Servicer and Investor Reporting system (the "SIR Exhibits"). (*Id.* at 6-9,

5    11.) The SIR Exhibits state that Fannie Mae acquired the Loan on April 1, 2003, from

6    Principal Residential Mortgage Capital Resources, LLC; the listed loan amount is

7    $152,000.00. (*Id.* at 7-8.) Green Valley asserts that these documents fail to demonstrate

8    an absence of disputed material fact as to whether Fannie Mae acquired a legal interest

9    in the Property before the 2013 Foreclosure Sale. (*See* dkt. no. 47 at 5, 7-8.) Green

10   Valley points to the Corporate Assignment Deed of Trust dated June 27, 2014 — which

11   conveyed CitiMortgage's DOT to Fannie Mae — to show that the facts regarding the

12   point at which Fannie Mae acquired its interest are disputed. (*Id.* at 8 (citing dkt. no. 33-1

13   at 17).) Green Valley further contends that it should be allowed to pursue discovery to

14   determine this date. (*Id.* at 8-9.)

15   Although they offer the Curcio Declaration and the SIR Exhibits to establish that

16   Fannie Mae purchased the Loan in 2003, Fannie Mae and FHFA have failed to satisfy

17   their initial burden of showing "that there is no genuine dispute of any material fact" as to

18   Fannie Mae's interest in the Property. Fed. R. Civ. P. 56(a). To be fair, Mr. Curcio

19   asserts that he is personally familiar with the internal system from which the SIR Exhibits

20   were printed. (Dkt. no. 32-2 at 3.) He further states that the SIR Exhibits were made in

21   the regular course of Fannie Mae's business. (*Id.*) The Curcio Declaration and the SIR

22   Exhibits thus appear to be properly authenticated business records that the Court may

23   consider in ruling on the Motion. *See Orr*, 285 F.3d at 773 ("A trial court can only

24   consider admissible evidence in ruling on a motion for summary judgment.").

25   ///

26

27   (*...fn. cont.*)
     the Court finds that the factual dispute prevents summary judgment at this stage of the
28   proceedings, the Court need not resolve the legal dispute in this Order.

1        But when read in the light most favorable to the non-moving parties, neither the

2    Curcio Declaration nor the SIR Exhibits establishes that there is no genuine dispute of

3    material fact as to when Fannie Mae acquired the requisite interest in the Property, and

4    what the contours of that interest are. The SIR Exhibits appear to be internal documents

5    created by Fannie Mae for tracking purposes. (*See* dkt. no. 32-2 at 6-9, 11.) They

6    suggest that Fannie Mae acquired the $152,000.00 Loan for the Property on or around

7    April 1, 2003, from Principal Residential Mortgage Capital Resources, LLC. (*Id.* at 7-8.)

8    The SIR Exhibits also describe the Loan as having a "First Lien" position and list the

9    servicer as "Fannie Mae/Seterus, Inc. as subservicer." (*Id.* at 6.)

10        According to the Curcio Declaration, the SIR Exhibits additionally demonstrate

11   "that the rights to service the Loan for Fannie Mae were transferred from CitiMortgage,

12   Inc. to Fannie Mae (with Seterus, Inc. as sub-servicer for Fannie Mae) effective January

13   31, 2014." (*Id.* at 4.) But the document to which Mr. Curcio refers indicates that

14   CitiMortgage transferred 35,443 loans to Fannie Mae in January 2014. (*Id.* at 11.) Mr.

15   Curcio states that this lump transfer of servicing rights includes the Property's Loan; he

16   also asserts that it is the only servicing rights transfer for the Property in the SIR. (*Id.* at

17   4.) As such, Mr. Curcio claims, this SIR entry demonstrates that CitiMortgage, Inc.

18   serviced the Loan for Fannie Mae until January 31, 2014. (*Id.*) But on June 30, 2014, five

19   months after this transfer of servicing rights, CitiMortgage recorded the Corporate

20   Assignment Deed of Trust, which "convey[ed], grant[ed], assign[ed], transfer[red], and

21   set over the described Deed of Trust together with all interest secured thereby, all liens,

22   and any rights due or to become due thereon to" Fannie Mae. (Dkt. no. 33-1 at 17.)

23        Considering the early stage of this litigation, the lack of discovery, and Fannie

24   Mae and FHFA's reliance on printouts from Fannie Mae's internal tracking system to

25   demonstrate their interest in the Property, the Court cannot conclude that there is no

26   genuine dispute of material fact. Accordingly, although the Court agrees with Fannie

27   Mae and FHFA on the preemption issue, the Court will deny the Motion.

28   ///

## V.     CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion or reconsideration as they do not affect the outcome of the Motion.

It is therefore ordered that Defendant Fannie Mae and Intervenor FHFA's Motion for Summary Judgment (dkt. no. 32) is denied.

DATED this 16th day of March 2016

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE